Good morning, Your Honors. Good morning. May it please the Court, my name is Carol Edward and I'm here today to represent Mr. Hernandez-Ramos. We have two appeals before the Court today. A little louder. Louder? Okay, sir. We have two cases before the Court today. One of them is an appeal from the denial of a motion to suppress, which was a request to terminate. The second is an appeal from the denial on a motion to reopen for purposes of filing for asylum. So we're asking for two different options. Both of them involve remanding for termination or remanding for purposes of having an asylum hearing. We have presented the information about the motion to suppress, principally because the Board of Immigration Appeals is basically saying that it doesn't matter if it's egregious because any time that we take you into custody and we run your fingerprints and we look through our system and your biometrics, because immigration is also now done by a photograph, that whatever we find out is for purposes of identification, not investigation. And it is our argument that... Isn't the issue as to whether the underlying documents they go to were developed for investigation or identification? I believe, Your Honor, that it has to do with what are they... Why are they getting into their records? Are they trying to investigate the person further because they haven't been able to identify them? Not the purpose of the underlying document, which at the time we never even had an opportunity to develop why it was there or even what it was because they said it was a candidate bio and it looks like a screenshot. And we asked for an opportunity to cross-examine or try to find out how those were developed and instead we received a decision saying our motion to suppress was denied on the identity issue without getting into it. So in terms of how it was developed or why, I honestly can't say because I don't know at that time in 2000 when each one of those documents were supposedly developed, how it was done or what was the purpose at that point. What I do know is that when he was stopped on January 1st of 2009 and he was pulled over in a Washington car with Washington plates and showed a valid Washington ID that had his real name on it that identified him, that he was arrested after that fact and they did further investigation, even though they knew who he was at that point because they actually had his identification. Does that still mean he's legally here just because they know who you are? No, it does not and I agree that it doesn't show anything. I mean in certain states now it actually does because certain states have said that they will not issue a driver's license without proof of lawful status in the United States, but Washington State is not one of the states that has followed that at this time. And that's why when you go to a federal building sometimes they won't accept a Washington license because they say it doesn't show proof of status. So you also, on your motion to reopen, you have to make a prima facie showing and you're saying on the motion to reopen I guess that you can show asylum and cat, I guess. And withholding, yes. What's the basis upon which Mr. Hernandez-Ramos believes he will be persecuted if he returns to Mexico? So thank you, Your Honor, for mentioning that. Well, I want to come to the answer, but I want to say that the standard for winning a motion to reopen, although it does require certainly prima facie proof of eligibility of relief of the statutory requirements, it does not require that he show that he's going to win. He just has to. I agree with you. I agree with you, but you have to make a prima facie showing of what the, if let's say if someone puts in their motion to reopen, I want to reopen this because I like frozen yogurt and I can eat that in the United States and not in Mexico. Should that motion to reopen be granted? No, it shouldn't because it doesn't meet the statutory requirements. All right. So you have to make a prima facie showing for asylum and cat. So I know that, you know, what's unique about Mr. Hernandez-Ramos that would distinguish his case from those brought by any other 30-something male from Mexico? So first of all, Your Honor, the other cases that have been before this court that I've been able to find on motion to reopen with the issue on social group and Mexican males have been ones that have been fully developed at a hearing. But what's his social group? Tell us what his social group is. It seems to me what you're saying is his social group is men that have been Americanized in the United States. What we were asking for is an opportunity to develop the social group, which we believe is tied to his family and the Los Satos. You'd be saying it's a family, his family. His family. Right. Who have been attacked by Los Satos and who are very fearful of the government because the way the government has come in and asked them questions at times. In our case, I recognize that a family can be a social group. There are many cases that recognize families as social group before this court, including. The other point and the reason I come back. You didn't articulate that very clearly in your paperwork. I can appreciate that. But I understood it to mean that you were talking about family. Yeah, family and the social group. And if you were to look at the documentation that was initially submitted to the Board of Immigration Appeals in support of the motion to reopen, you will see that there was quite detailed information, a very long or pretty specific description from our client about people who had specifically been hurt and injured by the Los Satos and why he is fearful that when he comes back, he would be immediately have the same problems that his family has. And the court said, well, or the BIA said, well, you didn't have problems before you left. And, of course, that's our whole point is that's why it's changed circumstances. And I do want to point out the BIA did say the information we provided was material. And they didn't say it wasn't material. And that's why we're denying the motion to reopen. They didn't say it wasn't changed circumstances. What was your prima facie case on Kat? That because of the family being attacked by Los Satos and because the government is essentially Los Satos comes in and asks them questions. And then the government comes in and asks them questions. And then they get taken down to potentially taken down by the government, arrested. People disappear. We did provide some documentation that people have disappeared at the government's instance. There's a high level of corruption where you don't know with the government which side somebody is on. So when you have actors. People in his family disappeared? Or are you just saying random people? His uncle was murdered and his legs were chopped off. He had two godsons that had their, one of them had names carved into their stomach. So very significant and severe incidents. And some of which not, we don't have the, we didn't have the death certificates on that. We indicated we were trying to get them. It was very difficult because people were very fearful of going to authorities and asking for information about these people who had obviously been murdered, who had been shot. But we did provide the information. And, of course, with the motion to reopen, the declaration or the affidavit of our client is deemed to be reopened. So the board should have looked at that and said, if these facts are true as we're stating, is there enough that you deserve a hearing to flush out these questions? And our point is not that, I'm not arguing the case in chief, you know, that he had a full hearing and now I'm before you and I'm arguing he should have won. All I'm asking at this point and all I believe that he's entitled to at this point is not for you to enter an order saying he's entitled to it, but simply that the case should be remanded to the immigration judge because he did meet this fairly low standard of showing the statutory eligibility. The Board of Immigration Appeals didn't say he didn't deserve it. I'm denying it on a discretionary basis. I'm not going to grant the motion to reopen. They said, you don't meet the statutory requirements and we don't even think that you've put enough in here that's even interesting to us. And if you look at a number of the Mexican cases where people have said, well, if you're Americanized and you're going back there, that's not enough. They're saying, in general, it's thugs, it's delinquents, we don't even know who's really going after us. And in this case, he said specifically he's concerned about this specific, the Los Zetos, they're still very active in Mexico and we did submit documentation to the board at that time saying they were, in fact, active. So he does have a danger. I would like to reserve a few minutes for rebuttal. Thank you, counsel. Thank you. May it please the court. Oh, good morning, Your Honor. May it please the court. Stephanie Hennis for Respondent. The court should deny the two petitions for review being examined here. In the first petition for review, which relates to suppression of identity evidence, there's no doubt that Petitioner is a native and citizen of Mexico who lacks authorization to be in the United States. He conceded that in his asylum application, which he filed with his motion to reopen. And in the declaration supporting that, he also explains that in 2008, his then-wife had filed a petition for alien relative on his behalf. Nevertheless, he still claims that the agency erred when it refused to suppress evidence that was discovered after independent evidence, which was discovered after a vehicle stop. But the agency reasonably denied suppression and refused to terminate the proceedings because precedent dictates that identity information that's obtained as part of a routine booking procedure, in this case the I-213, shows that this was just a form of processing the intake of someone who had already, the immigration judge had found had already admitted to being in the United States illegally, is not evidence that can be suppressed. I'm more interested in the motion to reopen. Okay, Your Honor. Did the BIA apply the wrong standard when deciding Hernando Ramos' CAT claim? In light of the BIA's statement that Hernando Ramos' evidence was not sufficient to establish that he has a clear probability of facing torture at the hands of or with the acquiescence of the Mexican government, how can we be confident that the BIA applied the right standard? I think you can be confident in that by looking at the totality of the agency's decision. Earlier in the board decision, it presents the standard that needs to be used for determining whether reopening is appropriate. It provides that the person needs to establish prima facie eligibility. It's in the first paragraph on the second page. And then it goes on to explain how to determine prima facie eligibility. The alien must show a reasonable likelihood that the requirements have been satisfied. So if you take that in. It is a pretty low standard. You know, we can't really weigh the evidence right there. So what's lacking in the prima facie case here? Well, first let me say that the Supreme Court has explained that motions to reopen should be disfavored and that the person, the alien who is moving for reopening, has a very high burden. So I just want to put that out there. But to specifically address your concerns, the situation here, respondent acknowledges that there's a lot of very violent crime that occurs in Mexico as a result of the Zetas. But in this particular instance, as the board pointed out, there aren't any of the petitioner's immediate family members who have actually been physically harmed. The stories that the petitioner presented are upsetting. I don't discount that. And neither did the board in this case. The counsel for the petitioner just said that his uncle, what happened to his uncle and someone else in the family. Well, it was, so it was his dad, so some family members, though not his mother or father or five siblings, his father's godson, an uncle, a friend, and his dad's friend's daughter. And the board's decision points out that that's not enough evidence to show that there would be any interest in the petitioner in this case if he were to return to Mexico. In petitioner's declaration, he even points out, in some instances, there just isn't any knowledge of why exactly the people were targeted. But in some, in one instance, like in relation to the father's godson, they thought that the Zetas believed he had provided information to the police. There's no indication in this case that the petitioner has worked with the Mexican police in any sort of way or that. Well, what social group did the petitioner identify that he belonged to in his petition to reopen? He identified his particular social group as young Hispanic males who are Americanized after living in the United States for many years and who have family members in Mexico who have been targeted by Los Zetas. Now, in this case, the agency did not claim that the stated social group was not a social group. Your Honor is correct that family can be a social group. The decision in this case relates to the petitioner showing his likelihood of being harmed based on that social group. But that's not the right test at this stage, is it? It's the likelihood that he would be entitled to relief, not the likelihood of the relief. Can we hold as a matter of law that his showing was so weak that there was no likelihood that he would be entitled to relief? Well, you don't have to say that there's no likelihood to the extent that I misspoke. The question here is whether there is a reasonable likelihood that he would be able to prevail on his claim. Can we hold as a matter of law that on these facts there's no reasonable likelihood of relief? Yes. Yes, that's correct, Your Honor. The board found that his evidence was material. I thought they said he presented material evidence supporting his claim. I think that was in regard to him saying that he had new and previously unavailable evidence. I apologize, Your Honor. You may be correct. I'm not confident that they- It's been so long since I've looked at so many cases. I can't keep it all straight. In this case, there was an initial discussion of whether he had provided new and previously unavailable evidence, which is something that's required if one is to- They did say he presented new- New evidence. Post-hearing evidence that was material to his claim. That's what I thought they said. I mean, the paragraph that I think you're referring to is the second paragraph on page 2 of the board's decision. Which decision is that? The date? I'm sorry. It's the decision that's dated May 17, 2013. It would be right at the beginning of the administrative record. Yeah, I got it. Okay. I have it. The second paragraph? The second paragraph, yes. So, I'm reading through it again. If that is what Your Honor's referring to, and I just don't see a discussion of materiality in there. I do know that, in general, a motion to reopen will not be granted unless the information that's provided is material. Well, maybe I was wrong. I don't know. I thought there was something. I certainly don't want to mislead Your Honor. You're not. It's been a while since I've looked at it. So, in this case, the way that the board set out its decision is very reasonable. It explains the basis for the petitioner's claim. It then lays out the law for reopening properly and correctly, providing the prima facie standard and what that means, which is a reasonable likelihood that the requirements for relief have been satisfied. And then it does explain that he had the ability to file a motion to reopen based on this new evidence that wasn't available to him. When he initially was placed in proceedings, and then goes on to discuss how that evidence was not sufficient to justify reopening and a hearing in immigration court based on the evidence that he presented. If Your Honors have no further questions, respondent requests that you deny the petitions for review. Thank you. Thank you, Kim. I did go back and read the Board of Immigration Appeals on the issue of materiality and what the judge, and I want to be clear with the court, and that is they say that they found that there was new evidence and they didn't specifically mention materiality. Instead, they went into the prima facie. So, yeah. So I just wanted to be clear on that. The other issue, again, on the motion to reopen, I believe that the case that came out August 1st of 2016 by this court, which is Solemn v. Lynch, which is at 831 Fed Third 1133, which is another case on the motion to reopen in an asylum context. And this is one where there was new evidence submitted. And the court, again, talks about the standard and what's really required, and also talks about how that the judicial review of the motion to reopen serves as a safety valve in the asylum process. And could you have done a better job on it would seem that the social group initially that's articulated is, you know, young men that are Americanized, and the family group isn't really articulated as well as the other one. I mean, because young Americanized men isn't going to get you anywhere, right? No. And I would agree that just because you're Americanized and you're going to Mexico is not going to be a sufficient social group. But what happened when we were trying to articulate a social group, I think the social group could have just talked about his family. But the reason that he is more at risk than others who are generally going back to Mexico has to do with the fact that his family has been likely face that when he goes back from the United States. We would also argue that he will stand out and they will be aware of him upon him coming back because he is another person new to the area. And when you've got people who are patrolling the area, they're going to notice somebody. But the fact alone without the family in the social group would not be successful before this court, and I would acknowledge that. And I think the social group that we've articulated includes people who have families who have been targeted by the Los Setos, and that's part of what the social group. And maybe we did it too narrowly, but for purposes of the motion to reopen and the standard. Well, once you added Americanized, it raised a flag. But when you look at the material that was submitted, I understood it to be a family-based claim. Yes, thank you. And I believe that the court also understood that. The Board of Immigration understood that as well. But I do want to point out that the whole line of cases on social group have developed since we had this Board of Immigration cases. So the Enrique case wasn't there when they made this decision. And the social visibility and all these issues have changed substantially. And just for that fact alone on the social group, we believe that it's appropriate to remand to the Board on that issue alone, let alone the fact that he never got a hearing. And we believe that because the standard, although it's – I'm not going to say it is significantly low. It's not there's no chance. It's exactly what the court said. There's no reasonable possibility. I don't think anyone can find that there's no reasonable possibility that he could meet the standard. He never had a chance. And that's why we couldn't have filed this. We could have filed for asylum in the first instance before the court, but these things hadn't happened. So there was no reason to do that at that time. It wouldn't have – it would have been a frivolous claim. I could have – we could have filed one that says Americanized, but we didn't because it wouldn't have been sufficient. So we got it. Got it. Thank you. Thank you very much. Any further questions from the court? Thank you. Thank you so much. Thank you, Your Honors. The matter is submitted at this time. We're going to take a 10-minute recess.
judges: Paez, Callahan, Selna